# In the United States Court of Federal Claims

**No. 05-888C**
**Filed: April 4, 2006**

| | | |
|---|---|---|
| **MICHAEL F. FEDERICO,** Plaintiff, v. **UNITED STATES,** Defendant. | * | **Jurisdiction; Motion to Dismiss; Civilian Pay; Breach of Contract.** |

**RICHARD SEGERBLOM**, Las Vegas, Nevada, for the plaintiff.

**JOHN H. WILLIAMSON**, Trial Attorney; **BRIAN M. SIMKIN**, Assistant Director; **DAVID M. COHEN**, Director, Commercial Litigation Branch, Civil Division; **PETER D. KEISLER**, Assistant Attorney General, United States Department of Justice, Washington, DC, for the defendant. **MEGHAN SERWIN FLANZ** and **DANA C. HECK**, Department of Veterans Affairs, of counsel.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

Plaintiff, Michael F. Federico, states that he is a podiatric surgeon who practiced in Albuquerque, New Mexico for twenty-four years. Plaintiff alleges in his complaint that in mid-2000, he was contacted by representatives of the Department of Veterans Affairs (VA) in Las Vegas, Nevada "to see if he would be interested in joining the staff" at the Las Vegas Veterans Affairs Medical Center (VAMC). Specifically, plaintiff alleges that in September, 2000, the Chief of Surgery at the VAMC "told him the position would start at $138,500.00

plus locality pay." Plaintiff claims that he subsequently took and passed the Nevada State Medical Exam in May, 2001, in reliance on these discussions.

Plaintiff alleges that in December, 2001, he "was informed that he was accepted to fill the position of podiatric physician and surgeon at the Las Vegas VA Medical Center," and, the following month, was told that "he would be paid $138,500.00." According to his complaint:

> During the next several months the Plaintiff requested from Human Resources a written contract confirming his salary and job description. He as [sic] told that he would not have a contract until he arrived in Las Vegas, but that his salary would definitely be at the GS 15, Step 10 level, which was $138,500. In reliance upon this representation, the Plaintiff accepted the position, quit his private practice in New Mexico, sold his home, and he and his wife moved to Las Vegas to begin his employment on July 28, 2002.[1]

Plaintiff further alleges in his complaint that, unbeknownst to him, two months before he moved to Las Vegas, the VA had determined that he would be paid $84,245.00, but that no one had informed him of the allegedly revised salary. Plaintiff states that had he known "that his salary would be this low he would not have accepted the position, quit his employment in New Mexico, sold his house, and moved to Las Vegas with his wife."

On July 28, 2002, the VA executed United States Office of Personnel Management Standard Form 50-B (SF 50-B), titled "Notification of Personnel Action." The SF 50-B granted plaintiff an "Excepted Appointment" to a position as a "podiatrist" at the VAMC in Las Vegas, Nevada, pursuant to 38 U.S.C. § 7401(1) (2000). The SF 50-B also stated that plaintiff was appointed to a full time position at Senior Grade, Step 7, with a Basic Pay of $84,245.00, and a Locality Adjustment of $7279.00, for a total, annual salary of $91,524.00.[2] The SF 50-B also stated that plaintiff automatically is covered by the FERS retirement plan and is entitled to participate in the Basic Life Insurance plan. The following day, July 29, 2002, plaintiff signed a document titled "Appointment Affidavits" as the "appointee." On this form, the "Position to which appointed" was listed as "Podiatrist," the "Date of Appointment" was listed as "29 July 2002," and the department and location was

---

[1] According to the Office of Personnel Management's website, a GS-15, Step 10 employee in 2002 earned a base salary of $107,357.00, and, adjusted for the Las Vegas locality, a total salary of $116,663.00. The court is unsure why plaintiff alleges that a GS-15, Step 10 employee in 2002 earned a base salary of $138,500.00, but because, as discussed below, plaintiff fails to establish subject matter jurisdiction before this court, it is unnecessary to consider the impact of this discrepancy on any possible award of damages.

[2] Statutory language in 38 U.S.C. § 7404(b) provides that the pay grade for a Clinical podiatrist appointed to a Veterans Health Administration position in accordance with 38 U.S.C. § 7401(1) shall be Chief, Senior, Intermediate, Full, or Associate grade.

listed as the "Department of Veterans Affairs" in Las Vegas, Nevada. The defendant represents that plaintiff has continued his employment at the VAMC since his appointment in 2002.

Plaintiff filed a complaint in this court on August 15, 2005, claiming, in his First Cause of Action, that the defendant's acts "constitute a breach of the employment contract which was entered into between the Plaintiff and the VA . . . . As a direct result of said breach and torts, the Plaintiff has suffered financial loss and emotional distress, the full extent of which is as yet unknown." Additionally, in his Second and Third Causes of Action, plaintiff claims that the defendant both intentionally misrepresented and negligently misrepresented plaintiff's salary and benefits at the VAMC in order to induce him to quit his practice in New Mexico and move to Las Vegas. Plaintiff claims that he has been harmed as a direct result of the defendant's misrepresentations, and requests injunctive relief enforcing the alleged, oral contract which he claims was entered into between himself and the VA, backpay, compensatory damages of $500,000.00, and attorney fees and other costs. Defendant filed a motion to dismiss both for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, and even on appeal. See Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g denied (1993)); United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990); see also View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). A plaintiff must establish jurisdiction by a preponderance of the evidence. See Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Thomas v. United States, 56 Fed. Cl. 112, 115 (2003); Martinez v. United States, 48 Fed. Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed. Cir.), reh'g denied (2002); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001), aff'd, 292 F.3d 1383 (Fed. Cir. 2002); Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 73 (2000); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)); Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002), cert. denied sub nom. Penn Triple S v. United States, 538 U.S. 921 (2003); Leider v. United States, 301 F.3d 1290, 1295 (Fed. Cir.), reh'g and reh'g en banc denied (2002), cert. denied, 538 U.S. 978 (2003); Conti v. United States, 291 F.3d 1334, 1338 (Fed. Cir.), reh'g en banc denied (2002), cert.

denied, 537 U.S. 1112 (2003); Consol. Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied sub nom. Consol. Edison Co. v. Pena, 522 U.S. 1108 (1998); see also New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, and reh'g en banc declined (1997); Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); RCS Enters., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.), reh'g denied (1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983); Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. at 45-46; Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d at 1580), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998); Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d at 1167 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d at 1416; Ho v. United States, 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (Fed. Cir. 2002); Alaska v. United States, 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-05 (1994).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act

requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. See 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); see also Palmer v. United States, 168 F.3d at 1314; Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001); United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir. 2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); see also United States v. Testan, 424 U.S. at 400; Fisher v. United States, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005) (en banc); Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or

regulation, the violation of which supports a claim for damages against the United States." (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999))); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g and reh'g en banc denied (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

Plaintiff's First Cause of Action – Breach of Contract

In his First Cause of Action, plaintiff asserts that the defendant made oral promises to pay him a salary of $138,500.00, plus locality adjustments. Plaintiff argues that, to his detriment, he relied on defendant's alleged oral promises and, therefore, this court should enforce the terms of the alleged promise as an oral contract. In his complaint, plaintiff states: "The above described acts of the Defendant constitute a breach of the employment contract which was entered into between the Plaintiff and the VA." In Plaintiff's Opposition to Defendant's Motion to Dismiss, plaintiff described his breach of contract claim as follows:

> Federico now brings this breach of contract action seeking to enforce the oral promises that were made to him. Federico is not alleging that once he was hired the government breached his contract or appointment, as the government describes his status. Federico is alleging that prior to his being hired he received an oral promise and that based upon that promise he took steps which enable him to enforce that promise.

The Federal Circuit has stated "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (quoting Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985)), cert. denied, 517 U.S. 1155 (1996); see also Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004) ("Like all federal employees, Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract."), cert. denied, 126 S. Ct. 330 (2005); Collier v. United States, 379 F.3d 1330, 1332 (Fed. Cir. 2004) ("As an appointed employee, Mr. Collier did not have an employment contract with the government, and did not acquire such a contract through his job description or performance plan."); Kania v. United States, 227 Ct. Cl. 458, 464-65, 650 F.2d 264, 268 ("Thus it has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are made."), cert. denied, 454 U.S. 895 (1981); Calvin v. United States, 63 Fed. Cl. 468, 472 (2005) ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting Collier v. United States, 56 Fed. Cl. 354, 357 (2003))) (alteration in original); Berry v. United States, 27 Fed. Cl. 96, 100 (1992) ("The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. It is well established that the rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status.") (citations omitted); Darden v. United States, 18 Cl. Ct. 855, 859 (1989) (finding that the most that can be said

about plaintiff's job description as a Grade 5 personnel clerk "is that plaintiff was apprised of her forthcoming responsibilities and the salary to which she was entitled for the performance of those duties. It may very well have created certain procedural rights, but under no circumstance may it be viewed as giving rise to a contractual relationship sufficient to create jurisdiction under the Tucker Act."); Orona v. United States, 4 Cl. Ct. 81, 82 (1983) ("[P]laintiff's employment . . . was through appointment and not by contract, and therefore this court has no jurisdiction under the Tucker Act to consider his claim."). Therefore, if plaintiff's claim is based on a breach of contract theory and his "employment was by 'appointment,' a breach of contract action against the government would be precluded." Hamlet v. United States, 63 F.3d at 1101 (citations omitted).

The plaintiff in Hamlet v. United States asserted that the United States Court of Federal Claims had jurisdiction over her complaint because the Agriculture Stabilization and Conservation Service had breached her employment contract when the agency removed her from her position. See id. at 1100. In Hamlet, the court relied on an employee manual, plaintiff's participation in the Civil Service Retirement System, and her enrollment in the federal health benefits program, as evidence that the plaintiff held her position by appointment and not under contract. See id. at 1101-02 (citing Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 735-37 (1982)). The Hamlet court concluded that the plaintiff's "breach of contract count does not provide for a substantive right to money damages and cannot provide for jurisdiction under the Tucker Act." Id. at 1102.

In Boston v. United States, 43 Fed Cl. 220 (1999), addressing similar issues, the court offered the following comprehensive explanation:

> After carefully considering the written and oral arguments of both parties, the Court concludes that plaintiff's employment in the civil service was by virtue of appointment, rather than by virtue of an employment contract, and that any entitlement to allowances must therefore be based on the relevant statutes and regulations, not an implied contract.
>
> * * *
>
> Where a federal employee holds his position by virtue of appointment, any entitlement to allowances must be based solely on the applicable statutes and regulations, and those statutes and regulations (or promises that they will be followed) do not give rise to an implied-in-fact contract. See Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985).
>
> * * *
>
> In this case, plaintiff attempts to do precisely what the courts in the above [omitted] cited cases were unwilling to permit – namely, to fashion an implied-in-fact contract from the underlying regulations and a government official's promise to abide by those regulations.
>
> * * *

> "Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not ipso facto create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government." [Shaw v. United States, 226 Ct. Cl. 240,] 251, 640 F.2d 1254 (1981); see also Zucker v. United States, [758 F.2d 637,] 640 [(Fed. Cir. 1985)]. Thus, if the plaintiff was employed by virtue of an appointment, rather than by virtue of an employment contract, this Court lacks jurisdiction under the Tucker Act to hear plaintiff's claim for breach of contract.

Boston v. United States, 43 Fed. Cl. 220, 221-26 (1999).

More recently, the Court of Appeals for the Federal Circuit summarized the status of a federal employee who holds an appointment as follows:

> [F]ederal workers serve by appointment, and their rights are therefore a matter of legal status even where compacts are made. In other words, their entitlement to pay and benefits must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles. Though a distinction between appointment and contact may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service. Applying these doctrines, courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel. These cases have involved, *inter alia*, promises of appointment to a particular grade or step level, promises of promotion upon satisfaction of certain conditions, promises of extra compensation in exchange for extra services, and promises of other employment benefits.

Adams v. United States, 391 F.3d at 1221 (Fed. Cir. 2004) (quoting Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983)).

Although a contract between the government and an individual employee is possible, it must be specifically spelled out as a contract by a person having authority to do so. Kania v. United States, 227 Ct. Cl. at 465, 650 F.2d at 268; see also United States v. Hopkins, 427 U.S. 123, 128-30 (1976); Walton v. United States, 213 Ct. Cl. 755, 756 (1977). As a general proposition:

> [T]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the

authority of the agents who purport to act for the Government . . . .

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001).

The dispositive question in the present case is whether plaintiff's employment was governed by appointment or by contract. When determining whether a government employee is serving by contract or appointment, the court should look to the relevant statutory language and implementing regulations, as well as the hiring documents. See Hamlet v. United States, 63 F.3d at 1101; Calvin v. United States, 63 Fed. Cl. at 472. In Calvin, the Transportation Security Administration gave written offers of conditional employment to the plaintiffs which contained salaries and positions. Id. at 470-71. Plaintiffs brought a breach of contract claim after failing to receive the listed salaries and positions. Id. The court looked to the applicable statute and held that it allowed plaintiffs' employment to be governed either by appointment or contract. Id. at 472. The Calvin court then turned to the hiring documents, which included the same or substantially similar Office of Personnel Management Standard Notification of Personnel Action Form, SF-50, and an "Appointment Affidavit," id. at 473, used by the VA in the present case. The Calvin court held that in light of this evidence, and "the principle that 'federal employees do not have contractual relationships with the government, barring an explicit agreement to the contrary executed by a federal officer who has authority to contract,' Darden v. United States, 18 Cl. Ct. 855, 859 (1989), plaintiffs are appointees and their claims of breach of employment contract are precluded." Id.

The court finds that in the present case, the relevant hiring documents and statutory language demonstrate that plaintiff was employed by appointment, and not by contract. On July 28, 2002, the VA executed an SF 50-B. This document stated that plaintiff was granted an "Excepted Appointment" as a podiatrist under the legal authority of 38 U.S.C. § 7401(1). The SF 50-B also describes plaintiff as entitled to "FERS" retirement and Basic Life Insurance participation. As the court noted in Calvin, an SF 50 "has been considered one 'of the usual indicia of civil service status.'" Calvin v. United States, 63 Fed. Cl. at 473 (quoting Horner v. Acosta, 803 F.2d 687, 694 (Fed. Cir. 1986)). Additionally, on July 29, 2002, the day after the VA approved plaintiff's appointment, plaintiff signed his name on the line above the words "Signature of appointee" on the form titled "Appointment Affidavit." This Appointment Affidavit demonstrates that plaintiff was "appointed" to the position of podiatrist.

Moreover, unlike the ambiguous statute in Calvin, the statutory language (38 U.S.C. § 7401(1)) in the present case also demonstrates that plaintiff's employment was governed by appointment. Section 7401(1) states that: "There may be appointed by the Secretary such personnel as the Secretary may find necessary for the health care of veterans . . . as follows: (1) Physicians, dentists, podiatrists, chiropractors . . . ." 38 U.S.C. § 7401(1). Plaintiff has pointed to no evidence in the statutory language or relevant documents to rebut the presumption that his employment was by appointment.

In fact, plaintiff fails to address the relevant statutory sections, 38 U.S.C. §§

7401(1), 7404, or the available evidence, including plaintiff's SF 50-B and the Appointment Affidavit plaintiff signed, all of which indicate that plaintiff was appointed to his position. Nonetheless, in his Opposition to Defendant's Motion to Dismiss, plaintiff cites to Salles v. United States, 156 F.3d 1383 (Fed. Cir. 1998), and argues that:

> . . . Oral contracts are enforceable against the government provided they are made by government employees who had actual or implied authority to bind the United States. The government does not assert in it [sic] motion that the oral agreement which Federico alleges was not made by someone with actual or implied authority, so at least for the purposes of this motion, it must be assumed that the oral agreement is valid.
>
> Accordingly, Federico believes the motion at hand [defendant's motion to dismiss] must be denied. It may be that after discovery has been conducted the government believes the oral agreement is not valid, or that it was not made by someone with binding authority, but for purposes of a motion to dismiss, the allegations contained in Federico's complaint are sufficient to proceed.

The facts of Salles, however, are distinguishable from those in the present case as Salles does not address the issue of federal employee appointment, and its holding does not support plaintiff's claim. In Salles, the plaintiff, a confidential informant, brought a breach of contract claim alleging that a government employee orally had promised to pay the plaintiff 25 percent of the value of the seizures and forfeitures resulting from information she allegedly had provided. Salles v. United States, 156 F.3d at 1383. The Federal Circuit held that under the Comprehensive Forfeiture Act of 1984, 28 U.S.C. § 524(c), none of the government employees had actual or implied authority to bind the United States in a contract to pay plaintiff a percentage of the seizures. Id. at 1384. The court, therefore, affirmed summary judgment for the defendant. Id. at 1383. Even if the court had held for the plaintiff in Salles, an informant seeking compensation under the Comprehensive Forfeiture Act is governed under different authority from a federal employee appointed to a position pursuant to 38 U.S.C. § 7401. Moreover, when an informant is compensated for information, generally the agreement is for a short term, project-type assignment, and compensation, if any, is dependent on information which is provided. To the contrary, plaintiff was appointed without a term, with an annual salary and benefits, and his employment was not for individual short-term assignments.

Furthermore, plaintiff's statement that his mere allegation that government officials made an oral promise during negotiations for federal employment is sufficient to survive a jurisdictional challenge is incorrect. The defendant need not deny or challenge the existence of the alleged oral promise to prevail on its motion to dismiss. Even assuming the facts as alleged by plaintiff are true for the purpose of the motion to dismiss, plaintiff's assertion that an unnamed government official made an oral promise to pay a specific salary during negotiations would fail as a breach of contract claim under the facts of the case and the legal precedent discussed above. Plaintiff has failed to identify any evidence

to rebut the presumption that he held his federal employment position pursuant to appointment, and the available documents, including his SF 50-B and the Appointment Affidavit, which plaintiff signed, demonstrate that his employment was by appointment and not by contract. See Barrett v. Soc. Sec. Admin., 309 F.3d 781, 784 (Fed. Cir. 2002); Forney v. Office of Pers. Mgmt., 57 M.S.P.R. 616, 618 (1993). Moreover, plaintiff has pointed to no relevant legal authority to support his claim that a pre-employment, oral promise, even if made, may be enforced in this court as contract. No amount of discovery could change the legal reality underlying plaintiff's claim that federal employees who serve by appointment may not bring contract claims regarding government positions held by appointment.

Plaintiff's Second and Third Causes of Action – Intentional Misrepresentation and Negligent Misrepresentation

Plaintiff's Second and Third Causes of Action allege that the defendant intentionally and negligently misrepresented plaintiff's salary at the VAMC, and that said misrepresentations directly resulted in his decision to quit his practice, sell his home in New Mexico, and move to Las Vegas. It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the Court of Federal Claims' jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2) (2000). Courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. See New Am. Shipbuilders v. United States, 871 F.2d 1077, 1079 (Fed. Cir. 1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act . . . ."); Tree Farm Dev. Corp. v. United States, 218 Ct. Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); Whyte v. United States, 59 Fed. Cl. 493, 497 (2004) (stating that the Tucker Act does not grant the court jurisdiction over independent tort claims); Cottrell v. United States, 42 Fed. Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States . . . ."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort actions brought in other courts were beyond the jurisdiction of the Court of Claims, just as tort cases are outside the jurisdiction of the Court of Federal Claims today."); Brown v. United States 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims . . . lacks jurisdiction over tort actions against the United States."); LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995) (noting that claims against the government for illegal interference with a lawsuit are "tort claims, over which the Court of Federal Claims has no jurisdiction"); Shearin v. United States, 992 F.2d 1195, 1197 (Fed. Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks--and its predecessor the United States Claims Court lacked--jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the

statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." Gibbons v. United States, 75 U.S. 269, 275 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." McCauley v. United States, 38 Fed. Cl. 250, 264 (1997), aff'd, 152 F.3d 948 (Fed. Cir. 1998); see also 28 U.S.C. § 1346(b) (2000); Wood v. United States, 961 F.2d 195, 197 (Fed. Cir. 1992) ("[D]istrict courts have . . . exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."); Martinez v. United States, 26 Cl. Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), aff'd, 11 F.3d 1069 (Fed. Cir. 1993). Because intentional and negligent misrepresentation are claims sounding in tort, plaintiff's Second and Third Causes of Action in the case currently before this court are outside this court's jurisdiction.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is, hereby, **GRANTED**, and plaintiff's complaint is **DISMISSED**, with prejudice. Because the court finds it is without jurisdiction to hear either plaintiff's breach of contract or misrepresentation claims, it is unnecessary to consider defendant's motion to dismiss for failure to state a claim upon which relief may be granted. The clerk's office is directed to enter **JUDGMENT** for the defendant in accordance with this decision.

**IT IS SO ORDERED.**

**s/Marian Blank Horn**
**MARIAN BLANK HORN**
**Judge**